UNITED STATES BANKRUPTCY COURT
DISTRICT OF CONNECTICUT

---

IN RE:                                )
                                      )
MATTHEW COULOUTE, JR.,                )    CASE NO.   13-21252 (ASD)
                                      )
        DEBTOR.                       )    CHAPTER   7
---
                                      )
HAMID HAMRAH,                         )
                                      )
        PLAINTIFF,                    )
                                      )
vs.                                   )    ADV. PRO. NO. 13-2039
                                      )
MATTHEW COULOUTE, JR.,                )
                                      )
        DEFENDANT.                    )
---

**MEMORANDUM OF DECISION**

**I.   INTRODUCTION**

This adversary proceeding presents a tale of the convergence of two individuals, Matthew C. Couloute, Jr. (hereinafter, the "Debtor") and Hamid Hamrah (hereinafter, the "Plaintiff"), both chasing dreams of representing professional football players in the National Football League (hereinafter, the "NFL"). In what appears to be a somewhat blind pursuit of his dream, the Plaintiff invested $50,000 in Athletes Inc., a newly launched agency of the Debtor and a partner. Unfortunately, these dreams failed to come true for both and quicky evolved into nightmares as Athletes Inc. failed, the Debtor now finds himself in bankruptcy, and the Plaintiff has lost his entire investment subject only to the determination of nondischargeability pursuant to Bankruptcy Code Sections 523(a)(2) and/or 523(a)(6) he requests in this proceeding.

For the reasons stated hereinafter, the Court determines the relevant debt to be subject to the discharge received by the Debtor, in accordance with which a judgment of nondischargeability shall enter in this proceeding.

## II.  PROCEDURAL BACKGROUND`

On June 17, 2013, the Debtor commenced the captioned bankruptcy case (Case No. 13-21252) by the filing of a petition under chapter 7 of the United States Bankruptcy Code, and on October 29, 2013, received a general discharge (hereinafter, the "Discharge"). On October 24, 2013, the Plaintiff commenced the captioned Adversary Proceeding (Adv. Pro. No. 13-2039) by the filing of a complaint (hereinafter, the "Complaint"). In the Complaint, the Plaintiff alleges that the Debtor owes the Plaintiff the sum of $52,700 and seeks a determination that such indebtedness is nondischargeable pursuant to §523(a)(2)(B) (false statements respecting financial condition) (Count One),[1] §523(a)(2)(A) (false pretenses, false representations or actual fraud) (Count Two), and §523(a)(6) (wilful and malicious injury) (Counts Three and Four).

After a trial and following the Court's receipt and review of post-trial briefs, the matter is ripe for resolution.

## III.  JURISDICTION

The United States District Court for the District of Connecticut has jurisdiction over the instant adversary proceeding by virtue of 28 U.S.C. §1334(b); and this Court derives its authority to hear and determine this proceeding on reference from the District Court

---

[1] At the Trial, the Plaintiff's counsel acknowledged that the alleged representations and omissions were not statements respecting the debtor's or an insider's *financial condition*, a requisite for the relief of nondischargeability under §523(a)(2)(B), and did not prosecute Count One.

pursuant to 28 U.S.C. §157(a), (b)(1) and the District Court's General Order of Reference dated September 21, 1984. This is a "core proceeding" pursuant to 28 U.S.C. §157(b)(2)(I).

## IV.  FACTUAL BACKGROUND

The Debtor, a former professional athlete, is an attorney whose past employers included both the NFL and the National Football League Players Association (hereinafter, the "NFLPA").

In February, 2005, the Debtor and Darrell Wills (hereinafter, "Wills"), formed Athletes Inc. to represent professional athletes, including athletes hoping to play in the NFL and to provide them with legal, marketing and managerial services.  Wills, also a former professional athlete, was then employed by IMG Football (hereinafter, "IMG") to recruit and represent professional football players on whose behalf IMG would negotiate player contracts with NFL teams, as well as marketing and endorsement deals.  Although Wills was then certified by the NFLPA to represent players in contract negotiations with NFL teams, Thomas Condon, of IMG Football, did the actual negotiating with the NFL on behalf of Wills' recruits.  After Wills left IMG, the NFLPA revoked his certification to negotiate player contracts with the NFL teams. The Debtor was and remained so certified.

The Plaintiff at all relevant times was a bank mortgage loan officer.  In connection with a mortgage transaction, the Plaintiff met Michael Gant (hereinafter, "Gant"), a friend of the Debtor who also worked with professional football players.  Gant helped the Plaintiff develop a niche market providing mortgages to professional athletes. The Plaintiff attended numerous football events and, with Gant's assistance, networked extensively to establish himself in this market.  It was at such an event in 2005 that Gant introduced the Plaintiff to the Debtor.

3

The Debtor and the Plaintiff met several times thereafter at football events and a friendship developed incident to which the Debtor asked the Plaintiff if he would be interested in investing in Athletes Inc. After the Plaintiff expressed interest, the Debtor emailed information to him regarding Athletes Inc., including its business plan (hereinafter, the "Business Plan").

On April 15, 2006, the Plaintiff lent Athletes Inc. the sum of $50,000 and Athletes Inc. gave the Plaintiff a convertible promissory note (hereinafter, the "Note"). Despite the diligent efforts of its principals, Wills and the Debtor, Athletes Inc. was not successful and closed its doors about a year later. Athletes Inc. made no payments on the Note and its principals received no salary; Athletes Inc. did reimburse most of the principals' expenses incurred in trying to recruit players.

Thereafter, the Plaintiff commenced an action against the Debtor in Missouri state court (hereinafter, the "State Court") alleging breach of contract and fraud. For failure to comply with a discovery order, the State Court ordered the Debtor to pay the Plaintiff monetary sanctions of $2,700; a debt the Plaintiff now asks this Court to determine nondischargeable under §523(a)(6) (Count Four).

While the State Court action was pending, the Debtor commenced the captioned bankruptcy case, thereby staying the State Court proceedings pursuant to the automatic stay of Bankruptcy Code §362(a).

## V.  DISCUSSION

As a threshold matter, the Court finds that the Debtor incurred no personal liability under the promissory note (hereinafter, the "Note"). The borrower under the Note was Athletes Inc.; the Debtor signed the Note only in his representative capacity and neither

4

the Note nor any other evidence provided for any personal guaranty by the Debtor. Nor has the Plaintiff sought or provided any grounds to pierce the corporate veil of Athletes Inc. to impose its liabilities upon its principals.

Because the Debtor has incurred no personal liability under the Note, the Plaintiff must establish that he is entitled to the $50,000 he seeks from the Debtor as damages for fraud or arising from a "wilful and malicious" injury" pursuant subsections 2(A) or (6), respectively, of §523(a).  Although the jurisdiction in which the alleged fraud occurred is unclear from the record, common law fraud and the laws of most states require proof of the same elements as §523(a)(2)(A).  Some, like Connecticut, require the higher "clear and convincing" standard of proof for fraud.  However, the Court in determining whether the Plaintiff's claims are excepted from the Discharge, and whether the Debtor has personal liability for Athletes Inc.'s indebtedness to the Plaintiff, the Court applied the more demanding "clear and convincing" standard.

**A.  *Count II:  Bankruptcy Code Section 523(a)(2)(A)***

Subsection (a)(2)(A)  of §523 provides, in relevant part:

> (a) A discharge under section 727 . . . of this title does not discharge an individual debtor from any debt--
> \* \* \* \*
> (2) for money . . .  to the extent obtained by--
>
>> (A)  false pretenses, a false representation, or actual fraud,

Under well-established §523(a)(2)(A) principles, the Plaintiff must prove each of the following five elements:

(1)   the debtor made the representations;

(2)   at the time he knew they were false;

5

(3)   he made them with the intention and purpose of deceiving the creditor;

(4)   the creditor justifiably relied on such representations; and

(5)   the creditor sustained the alleged loss and damage as the proximate result of the representation having been made.

See, e.g. Universal Bank, N.A. v. Owen (In re Owen), 234 B.R. 857, 860 (Bankr. D. Conn. 1999). "To be actionable, the debtor's conduct must involve moral turpitude or intentional wrong; mere negligence, poor business judgment or fraud implied in law (which may exist without imputation of bad faith or immorality) is insufficient." Id.

The Plaintiff claims that the Debtor fraudulently induced him to invest $50,000 in Athletes Inc. by means of false representations and omissions in the profile of Wills contained in Business Plan. Wills and the Debtor each wrote his own short one-paragraph profile summarizing his education and experience. Wills' profile stated that he had signed five first round draft choices over five years and that he was responsible for recruiting and negotiating $120,000,000 in player contracts and marketing and endorsement deals; it did not state that his NFLPA certification had been revoked. Wills had recruited and represented numerous players and had negotiated some marketing and endorsement deals, but he had not personally negotiated any NFL player contracts; IMG's representatives personally negotiated the player contracts for Wills' recruits.

Notwithstanding that some of the representations in Wills' profile -- including the representation that he had negotiated player contracts -- may have been false, or at least somewhat exaggerated, the Plaintiff has provided no evidence from which the Court could reasonably infer that the Debtor intended to deceive the Plaintiff through the Business Plan

or otherwise.[2] On the contrary, if Athletics Inc. had succeeded as the Debtor had hoped, the Plaintiff would have benefitted; including the option to convert the Note to a valuable equity interest if the Plaintiff so desired. The Plaintiff also would have made contacts to help expand his mortgage market. And, the Debtor testified that he had known Wills for years, that Wills was the best football recruiter in the country and that he had no reason to question the veracity of his profile, which, in fact, he believed to be accurate.

Although the Business Plan made no mention of Wills' decertification, the Debtor testified credibly that Wills' decertification was well known in the industry and that notwithstanding the Plaintiff's testimony that he did not know about Wills' decertification, the Debtor had told the Plaintiff about it at a meeting in Atlanta and the Plaintiff had responded that it wasn't a problem. And, as already noted, the Debtor himself was NFLPA certified.

Nor has the Plaintiff met his burden of proving he justifiably relied on the information contained in or omitted from Wills' profile in the Business Plan. The Plaintiff had been a mortgage loan officer for many years, was then providing mortgages to professional athletes, and obviously knew the importance of and how to verify information in a loan application. Yet the Plaintiff testified that he relied solely on the brief biographical blurbs in the Business Plan, notwithstanding that the Business Plan itself urged the reader to see

---

[2] In making this determination the Court is, of course, fully cognizant that the Debtor made a prior false statement in a matter unrelated to Athletes Inc. by significantly inflating his income in connection with a real estate rental application as noted in *Plaintiff Hamid Hamrah's Post-Trial Brief*, ECF No. 88, p. 11. In the Post-Trial Brief, the Plaintiff requests the Court to "discredit Debtor's testimony" *citing* Rule 404(b)(2) of Federal Rules of Evidence (*Permitted Uses; Notice in A Criminal Case*), a notice provision applicable to a prosecutor in a criminal case. *See also* Rules (a)(1) & (2) and (b)(1). The Court has carefully examined the Debtor's testimony, during which he admitted this false statement, and observed the Debtor's demeanor during his testimony, and now finds his testimony credible and draws no inference adverse to him on the basis of this prior false statement. Accordingly, the Court need not address the applicability or preclusive nature of Rule 404.

7

the principals' full resumes. The Plaintiff never requested the full resumes, never made any inquiries about Wills or the Debtor, and did not even "google" Athletics Inc. Although "justifiable reliance" is a subjective standard, it "does not leave reasonableness irrelevant, for the greater the distance between the reliance claimed and the limits of the reasonable, the greater the doubt about reliance in fact." *Field v. Mans*, 516 U.S. 59, 76, 116 S.Ct. 437, 446 (1995).

The Court concludes that the Plaintiff has not met his burden of proof as to several requisite elements of §523(a)(2)(A) for an exception to discharge under that section, specifically, elements (2) (a representation known to be false when made), (3) (an intention to deceive) and (4) (justifiable reliance).

B.     **Count III:  Bankruptcy Code Section 523(a)(6)**

Through Count Three of the Complaint the Plaintiff seeks a determination that the relevant debt is nondischargeability under the standards of §523(a)(6) which provides in relevant part:

> (a) A discharge under section 727 . . . of this title does not discharge an individual debtor from any  debt--
>
> * * * *
>
> > 6) for willful and malicious injury by the debtor to another entity or to property of another entity.

While neither "willful" nor "malicious" conduct is defined by the Bankruptcy Code, the United States Supreme Court has clarified that §523(a)(6) renders non-dischargeable "only acts done with *actual intent to cause injury*", not merely "acts, done intentionally, that cause injury, " *Kawaauhau v. Geiger*, 523 U.S. 57, 118 S.Ct. 974 (1998) (emphasis added), a decision pointed out to Plaintiff's counsel during his opening statement at the

8

Trial. *In Kawaauhau v. Geiger*, the Supreme further noted:

> The word "willful" in (a)(6) modifies the word "injury," indicating that nondischargeability takes a deliberate or intentional injury, not merely a deliberate or intentional act that leads to injury.

*Id.*, 523 U.S. at 61.

The Plaintiff nonetheless conflated the requirements of §523(a)(2)(A) and (a)(6) and utterly failed to meet his burden of proof as to any intent of the Debtor to injure the Plaintiff. As noted, if Athletics Inc. had succeeded as both had hoped and expected, the Plaintiff and the Debtor would have reaped substantial profits, reflective of an intent to benefit, not injure.

C. ***Count IV: Bankruptcy Code Section 523(a)(6) As Applied to the State Court Action.***

As to the State Court sanctions, whether sanctions are nondischargeable under §523(a)(6) depends upon the particular facts and circumstances that gave rise to the imposition of the sanctions at issue. *See, e.g., In re Fernandez*, No. 06-2059, 2008 WL 268975, *3 -*5 (Bankr. D.Conn. January 29, 2008). The Plaintiff has the burden of proof - either by application of collateral estoppel to the State Court's contempt and sanctions order or by presentation of evidence in this proceeding - that the Debtor's conduct that resulted in sanctions satisfies the §523(a)(6) criteria established in *Kawaauhau v. Geiger*, including an intent to cause injury. The Plaintiff has not met this burden.

## VI. CONCLUSION

In accordance with the forgoing discussion, the Court concludes that the Plaintiff's claims against the Debtor are not excepted from the Debtor's Discharge. Judgment in

accordance herewith shall enter for the Debtor.

Dated: March 31, 2015                                        BY THE COURT

*Albert S. Dabrowski*
Albert S. Dabrowski
United States Bankruptcy Judge